UNITED STATES v. MEYER & LANGE (No. 4462) [1]

United States Court of Customs and Patent Appeals, April 11, 1944

*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for appellee.

[Oral argument February 2, 1944, by Mr. Weeks and Mr. J. Bradley Colburn]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain muscat peeled grapes, imported in 15-ounce cans, dutiable at 25 cents per cubic foot under paragraph

---
[1] C. A. D. 277.

742 of the Tariff Act of 1930, as claimed by the importer, rather than as fruits, prepared or preserved, not specially provided for, at 35 per centum ad valorem under paragraph 752 of that act, as assessed by the collector at the port of New York.

The paragraphs in question, so far as pertinent, read:

PAR. 742. Grapes in bulk, crates, barrels or other packages, 25 cents per cubic foot of such bulk or the capacity of the packages, according as imported   *   *   *.

PAR. 752. Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, and mixtures of two or more fruits, prepared or preserved, 35 per centum ad valorem   *   *   *.

The importer introduced in evidence collective exhibit 1 and exhibit 2.

Collective exhibit 1 consists of a tin can in which grapes were imported, together with the grapes from that can which are contained in a glass jar.   Exhibit 2 consists of a can of the grapes as imported.

It was stipulated by counsel for the parties on the trial below that grapes, such as those here involved, are "used in the United States in fruit cocktails and fruit salads, and   *   *   *   grapes with the skin on are used in the same way."

It is contended in the brief of counsel for the Government that the provision in paragraph 742, *supra*, for "Grapes in bulk, crates, barrels or other packages, 25 cents per cubic foot of such bulk or the capacity of the packages, according as imported" was intended to apply only to grapes in their natural state.   However, at the time of the oral arguments in this court, counsel for the Government expressly abandoned that argument and conceded that the grapes in question, although peeled, are, nevertheless, grapes within the purview of that provision. It is further contended in the brief of counsel for the Government that the Congress intended that only such grapes as are imported in *large containers* should be covered by paragraph 742, *supra*, and that grapes in *small tin containers*, such as the 15-ounce cans here involved, were not intended to be included within that paragraph; that, applying the rule *expressio unius est exclusio alterius*, the Congress excluded grapes in small containers from paragraph 742, *supra;* and that the language in the paragraph " 'or other packages' calls for the application of the rule of *ejusdem generis*," which would exclude the merchandise here involved.

In support of their contentions, counsel for the Government rely upon the legislative history of the provision in question, and call attention to the fact that the provision first appeared in paragraph 742 of the Tariff Act of 1922.

Paragraph 219 of the tariff act of 1913, which was identical with paragraph 276 of the tariff act of 1909, read: "Grapes in barrels or other packages, 25 cents per cubic foot of the capacity of the barrels or packages."

As passed by the House of Representatives, paragraph 742 of H. R. 7456 (H. R. 7456 later became the Tariff Act of 1922) was identical with the provision contained in paragraph 219 of the tariff act of 1913.

On page 726 of the Summary of Tariff Information, 1921, it is stated that—

The provision for assessing duty on grapes per cubic foot of the capacity of the *package* has been retained, because *most* of the imported grapes are packed in cork dust, making difficult the determination of the actual weight of fruit without spoiling the fruit. [Italics ours.]

As finally enacted, however, paragraph 742 of the Tariff Act of 1922 was identical with paragraph 742 of the Tariff Act of 1930.

As passed by the House of Representatives, the provision for grapes in paragraph 742 of H. R. 2667 (H. R. 2667 later became the Tariff Act of 1930) was identical with the provision contained in paragraph 742 of the Tariff Act of 1922. As reported to the Senate by the Senate Finance Committee, following hearings before that committee, the provision was amended to read as follows: "Grapes, in their natural state, or sulphured, 5 cents per pound, including the weight of containers and packing." In its report to the Senate (Report No. 37 at page 27) the Senate Finance Committee, with reference to the amendment, said:

* * *. Most of our imports consist of foreign high-priced grapes packed with filling material such as sawdust, cotton waste, or cork dust in small boxes weighing 25 pounds or less. The changes in method of levying the duty is designed to facilitate entries. The increase in duty involved in the change is designed to assist that portion of our grape industry, particularly in California, which has developed a table grape mainly for winter consumption and which under present conditions must meet the competition of considerable imports of grapes arriving during the winter months.

The committee's amendment was debated on the floor of the Senate and was rejected. See Congressional Record, Vol. 71, Part 5, 71st Congress, 1st Session, pp. 5610 and 5611.

The Congress has frequently referred in tariff statutes to "tins" as "packages." For example, in paragraph 40 of the tariff act of 1897, it provided for olive oil in "bottles, jars, tins, or similar packages." In paragraph 258 of that act and in paragraph 270 of the tariff act of 1909, it provided for fish packed in tin boxes, with the rates of duty depending upon the size of the packages. In paragraph 199 of the tariff act of 1913, it provided for beans "contained in tins, jars, bottles, or similar packages."

Paragraph 258 of the tariff act of 1897 provided that fish of certain kinds, packed in bottles, jars, tin boxes or cans, "When in packages containing seven and one-half cubic inches or less," should be dutiable at a certain rate, in packages "containing more than seven and one-half and not more than twenty-one cubic inches" at a higher rate, in packages "containing more than twenty-one and not more than

thirty-three cubic inches" at a still higher rate, and in packages "containing more than thirty-three and not more than seventy cubic inches" at a still higher rate. It also provided for fish "if in other packages" at 40 per centum ad valorem, and "All other fish (except shellfish), in tin packages, 30 per centum ad valorem; fish in packages containing less than one-half barrel, and not specially provided for, in this act 30 per centum ad valorem."

In construing paragraph 258, *supra*, the Circuit Court for the Southern District of New York held, in the case of *Strohmeyer & Arpe Co.* v. *United States*, 172 Fed. 295, that anchovies and sardines *in tins containing more than seventy cubic inches and less than one-half barrel* were subject to the provision in that paragraph for "fish in other packages" at 40 per centum ad valorem. In so holding, the court, among other things, stated that—

When Congress said "if in other packages," it undoubtedly meant other packages than those just immediately before described; and the tin package in which the imported fish come is certainly another package from those.

On appeal, the Circuit Court of Appeals, Second Circuit (*Strohmeyer & Arpe* v. *United States*, 178 Fed. 268), affirmed the judgment of the Circuit Court, and, in so doing, stated that the phrase "in other packages," contained in paragraph 258, *supra*, was "broad enough to cover packages of the same class as those enumerated and also packages of a different class—wooden boxes, wicker baskets, or what not. In *United States* v. *Rosenstein*, 98 Fed. 420, 39 C. C. A. 122, we expressed the opinion that this phrase applied only to a variation in the size of the container, not in its material or character." The court also stated that the importer in that case, in effect, requested the court to—

amend the act by altering the phrase so as to read "other retail packages," upon the testimony showing that packages of the sizes specified (under 70 cubic inches) are usually sold to the housekeeping consumer, while larger packages are bought by grocers and delicatessen storekeepers, who keep the open can on their shelves and sell small lots of fish from it to consuming purchasers. To do so would be to carry the somewhat overworked rule "noscitur a sociis" to a ridiculous conclusion. There is nothing to show that Congress had in mind any distinction between wholesalers and retailers when it framed this paragraph.

We find nothing whatsoever in paragraph 742, *supra*, or in its legislative history to indicate that by the language "or other packages," contained in that paragraph, the Congress intended to limit the provision to packages similar to crates or barrels, or to packages containing large quantities. On the contrary, we are of opinion that the Congress intended that the language "all other packages" should not be so limited, and that grapes, packed in tins weighing 15 ounces, as in the instant case, should be covered by that paragraph.

As hereinbefore noted, under point I in their brief, counsel for the Government contend that the provision for grapes contained

in paragraph 742, *supra*, was intended to be limited to grapes in their natural state, imported in large quantities, and, in support of their contention, counsel cite the case of *United States* v. *La Manna, Azema & Farnan et al.*, 14 Ct. Cust. Appls. 123, T. D. 41647, where the question presented was whether pearl onions, peeled, pickled and "ranging in size from about one-eighth of an inch in diameter to about one-fourth or three-eighths of an inch in diameter, put up in bottles of white vinegar," were dutiable as onions at 1 cent per pound under paragraph 768 of the Tariff Act of 1922, or as "Vegetables, if cut, sliced, or otherwise reduced in size, * * * or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for" at 35 per centum ad valorem under paragraph 773 of that act. It was admitted on the trial below that the onions were *imported as condiments*. The holding of the court in that case is correctly stated in the headnote, which we quote:

In the tariff acts of 1890, 1894, and 1897 onions were provided for by the bushel; and in those of 1909 and 1913 by the "bushel of 57 lbs." In the act of 1922 they are provided for by the pound. The Tariff Commission's 1921 Summary of Tariff Information stated that the change had been made "from bushels to pounds to conform to commercial usage." No change in classification was intended; and the provision of paragraph 768, Tariff Act of 1922, for onions, means, as held under former acts and indicated by the use of the dry measure "bushel," ordinary onions in their natural state. Pearl onions peeled, pickled in small bottles, used as a condiment, are dutiable as pickled vegetables, under paragraph 773. *Brown* v. *United States*, 6 Ct. Cust. Appls. 415, and G. A. 8845, T. D. 40376, distinguished.

As hereinbefore noted, although counsel for the Government contend in their brief that the provision for grapes in paragraph 742, *supra*, was intended to be limited to grapes in their natural state, imported in large quantities, at the time of the oral arguments in this court, counsel withdrew the contention that the provision was limited to grapes in their natural state and conceded that the grapes here in question are grapes within the purview of that paragraph.

We think it is obvious, from what has been said, that the decision in the *La Manna, Azema & Farnan et al.*, case, *supra*, has no bearing on the issues in the case at bar.

For the reasons stated, the judgment of the United States Customs Court is *affirmed*.

BLAND, Judge, dissenting.

To my mind it is inconceivable that Congress in passing paragraph 742 of the Tariff Act of 1930 and in using the phrase "Grapes in bulk, crates, barrels *or other packages*" [Italics mine] could possibly have meant packages such as are at bar. In establishing the unit of a cubic foot of space as a basis for duty (at 25 cents per cubic foot),

surely Congress could not have had in mind 15-ounce tins (containing only about one-seventieth of a cubic foot) of peeled grapes hermetically sealed in their juice. In the use of the word "packages" I think the court should have concluded that Congress never contemplated a package of preserved grapes (and these necessarily are preserved) in so small a container as to make the tariff duty applicable to them wholly inadequate for the purposes intended.

Everything connected with the legislative history of this provision suggests that Congress had in contemplation grapes "in bulk, crates, barrels, or other packages" which ordinarily were packaged in sawdust or other packing material in such manner that to remove them from the package would disturb their keeping quality.

The majority have arrived at what I regard as an anomalous conclusion based upon the importance to be given to the use of the phrase "other packages" in the paragraph. It is true that the hermetically sealed, small containers may, in a broad sense, be regarded as packages, but in my judgment they are not packages within the meaning of the paragraph. I will not belabor the issue as to what Congress meant by "packages," but it is obvious that it might include containers other than crates or barrels, that it might contain grapes which Congress had in mind in containers not hermetically sealed that would respond to the common meaning of the term "package." The majority evidently found it difficult to draw a line of demarcation solely upon the question of the size of the package; but to my mind it is the duty of the court, in attempting to arrive at the intent of Congress, to avoid a construction that brings about an anomalous result.

This problem confronted the court in the case of *United States* v. *La Manna, Azema & Farnan et al.*, 14 Ct. Cust. Appls. 123, T. D. 41647, referred to in the majority opinion. There the onions were very small, some of them smaller than peas. The bottles contained white vinegar. There, as here, the rule that an *eo nomine* provision for merchandise includes that merchandise in all forms was invoked. It was claimed there that the onions were dutiable as "Onions, 1 cent per pound." It was pointed out in that decision that Congress had changed the measurement of the same kind of onions from bushels to pounds to "conform to commercial usage." We there had before us a problem as to whether Congress, when it changed from bushels to pounds, had in mind the same onions that it had theretofore *eo nomine* provided for by the bushel. The court held that onions put up in small bottles should not be classified for duty purposes under a provision which provided for the pound as the unit of measurement. To avoid such an anomalous result we said, by a unanimous opinion of this court, that Congress could not have had in mind, when it enacted the provision for onions at 1 cent per pound, onions in small

jars of 1¾ ounces. We there applied the so-called "master rule of construction" later announced by this court in *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078, in which we said:

* * *. All rules of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule. The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent. * * * (citing numerous cases).

Also pertinent here is *United States* v. *Stone & Downer Co. et al.*, 274 U. S. 225, where the Supreme Court of the United States, to avoid an anomalous result, pointed out that Congress in the use of the term "clothing wool" could not have intended the exclusion of long-fibered combing wool. This conclusion was reached notwithstanding it conflicted with the well-understood meaning of the term previous to that decision.

The instant goods are peeled grapes, yet under the authorities they are admittedly grapes, but not the grapes provided for in paragraph 742 which were to be measured by the "cubic foot of such bulk or the capacity of the packages." If we follow the reasoning in the *La Manna* case, it leads us to the inevitable conclusion, I respectfully submit, that the peeled grapes hermetically sealed in their juice in tins containing only about one-seventieth of a cubic foot could not have been within the contemplation of Congress when it enacted the provision. If we were right in the *La Manna* case, it is my considered judgment that the majority are wrong in this one.

I do not care to go into the legislative history of the provision or the circumstances under which the involved grapes provision was enacted, notwithstanding the fact that in my judgment it conclusively shows that Congress never intended the term "packages" to be made applicable to hermetically sealed tin containers such as are involved in the instant appeal.

In construing the term "or other packages," we should not lose sight of the application of the rule of *ejusdem generis*. Congress said, "Grapes in bulk, crates, barrels" and then made the general provision for "other packages." In arriving at the intent of Congress in the use of the term "other packages," we should consider the nature of the preceding part of the paragraph—"Grapes in bulk, crates, barrels." Surely a tin can, holding one-seventieth of a cubic foot, is not, as a package, *ejusdem generis* with crates and barrels.

The majority have attempted to distinguish the *La Manna* case mainly by calling attention to the fact that the onions in that case had been pickled, etc. The fruit provision in the instant case, paragraph 752, likewise provides for fruits which have been preserved in particular stated ways and also "otherwise prepared or preserved."

The reasoning of the majority opinion is to the effect that as long as the canned grapes remain grapes, it does not make any difference what kind of treatment they have received. If the grapes in this case had been cooked and yet were grapes, it would have made no difference in the holding of the majority. This is true by reason of the fact that they have given controlling influence to the rule that an *eo nomine* provision for an article includes that article in all its forms. That rule, like all others, must be subject to exceptions.

Of course, the problem is at once presented as to where the line should be drawn with respect to the size of the package. To my mind, each case involved should rest on its own bottom, and where it appears, as it does to me in this case, that a tin can of the above description should not be regarded as *ejusdem generis* with "in bulk, crates, barrels," we should so construe the paragraph as to avoid a resulting anomaly.

Numerous other cases supporting the views herein expressed, many of which were cited by the Government in its brief, might be referred to, but I think the *La Manna* case, *supra*, is the most pertinent.

I think the judgment below should be reversed.